FILED
SUPERIOR COURT
OF GUAM

2021 APR 23  AM 10: 30

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0125-21 |
| vs. | DECISION AND ORDER |
| **MARK FELIX aka Mark Mark Felix,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on April 8, 2021, for hearing on Defendant Mark Felix aka Mark Mark Felix's ("Defendant") Motion to Dismiss for Violation of Defendant's Constitutional Rights or in the Alternative to Suppress Evidence. Defendant was present with counsel Assistant Alternate Public Defender Heather Zona and Chuukese Interpreter Casanova Nakamura, and Assistant Attorney Generals Sean Brown and Alysa Draper-Dehart were present on behalf of the People of Guam ("the Government"). Having considered the evidence presented, oral and written arguments, and legal authorities presented by both parties, the Court hereby issues the following Decision and Order.

## BACKGROUND

On March 11, 2021, Defendant was indicted with the following charges: (1) Attempted First Degree Criminal Sexual Conduct (As a First Degree Felony); (2) Second Degree Criminal Sexual Conduct (As a First Degree Felony) – 3 Counts; (3) Attempted Third Degree Criminal Sexual Conduct (As a Second Degree Felony); and (4) Fourth Degree Criminal Sexual Conduct

(As a Misdemeanor) – 3 Counts. (Indictment, Mar. 11, 2021). These charges stem from allegations that Defendant sexually assaulted I.N. (DOB: 06/11/2005) on or about March 4, 2021. (Decl. of Courtney Leigh Scalice, Magistrate's Compl., Mar. 5, 2021).

On March 17, 2021 at Arraignment, Defendant asserted his right to a speedy trial.

On March 31, 2021, Defendant filed the instant Motion. On April 1, 2021, the Government filed its Opposition, and on April 2, 2021, Defendant filed his Reply.

On April 8, 2021, the Court heard sworn testimony from Guam Police Department ("GPD") Detective Mary Jane Raval and Sergeant Frank Santos. After the conclusion of evidence, the Court gave the parties leave to file proposed findings of fact and conclusions of law. On April 9, 2021, the Government filed its Proposed Findings of Facts and Conclusions of Law. On April 21, 2021, Defendant filed his Proposed Findings of Fact and Conclusions of Law.

At the April 8, 2021 hearing, the Court ascertained the following facts from witness testimony:

1. Defendant was identified as a suspect in a criminal sexual conduct matter the morning of March 4, 2021.

2. Detective Raval and three other officers, Sergeant Santos, Detective Angel Santos, and Detective Keane Pangelinan went to do a suspect check at Defendant's place of employment. The four detectives arrived around 12:15 pm in two unmarked police cars. All four wore a polo shirt with the GPD Criminal Investigation Division ("CID") logo, and their badges were visible on their hip next to their weapons.

3. Defendant was identified at the worksite based on the description provided by the accuser in this case.

4. All four detectives approached Defendant, asked him to identify himself, and told him that they needed to take him with them to talk. Defendant identified himself by name and date of birth. Detective Raval testified Defendant asked them "what is this all about?"

5. Detective Raval advised Defendant of the reasons for their presence, to which he acknowledged. Detective Raval testified Defendant "acknowledged" by saying "okay." Detective Raval testified that Defendant also "acknowledged" because he nodded. Defendant did not resist or tell them he did not want to go, which gave Detective Raval the impression that he agreed.

6. Detective Raval admitted, however, that had Defendant resisted, he would have been arrested for resisting arrest.

7. Defendant was then instructed to place his hands on a box and was patted down for weapons.

8. Defendant's personal items were given to his employer. Detective Raval testified that it took "a while" to figure out what to do with Defendant's belongings.

9. Defendant was placed in handcuffs with his hands behind him.

10. Detective Raval estimated that she told Defendant he was under arrest around 12:35 pm, prior to departing the location.

11. Detective Raval repeatedly testified that she advised Defendant of his *Miranda* rights from memory at his workplace before escorting him to the car. Detective Raval could not recall what exactly she said to Defendant. Detective Raval testified that she has advised individuals of their *Miranda* rights numerous times throughout the past sixteen years as a GPD officer. Detective Raval later acknowledged that she wrote in her report that she verbally read Defendant his *Miranda* rights from the *Miranda* rights card. Sergeant Santos testified that Detective Raval read Defendant his *Miranda* rights from a card.

12. Detective Raval drove Defendant and Sergeant Santos to the CID office in Tiyan. Sergeant Santos sat in the back with Defendant as a safety measure because they were riding in an unmarked police vehicle which did not have a "cage." Sergeant Santos sat behind the driver's seat; Defendant sat behind the passenger seat. Detective Raval acknowledged that she detained Defendant's freedom of movement.

13. Detective Raval asked Defendant several questions about the allegations in this matter throughout the drive from Defendant's place of employment to the CID office in Tiyan. Detective Raval started asking Defendant questions as soon as they got in the car. Detective Raval estimated that the drive took about twenty (20) minutes.

14. As Detective Raval was driving, she did not see Defendant's face when he answered her questions, except for when the car was stopped at traffic lights. Detective Raval estimated the total amount of time they were stopped at a traffic light was a minute or less.

15. Detective Raval testified that Defendant's nationality was Pohnpeian and that she knew he was Pohnpeian while they were in the car.

16. During the car ride, Defendant made statements to Detective Raval about the incident in question, including that he woke the alleged victim up to ask for a charger, that he had a number of beers to drink, and that he made a "first and last mistake" and was sorry.

17. Detective Raval testified that she believed Defendant was referring to the incident in question as to the "first and last mistake," but acknowledged that it was possible that Defendant may have been referring to asking for the charger, or drinking the beer.

18. Detective Raval testified that Defendant did not specifically tell her he didn't speak English, but that he said he didn't understand what she was saying.

19. Detective Raval offered Defendant a translator in the car, but one was not provided in the car.

20. Detective Raval testified she was going to do the "rights advise" after they arrived at the police station. After they arrived at the police station, Defendant said "I thought you were going to get me an interpreter."

21. Detective Raval testified that GPD typically uses police officers who speak the individual's language as interpreters during interviews. If an officer is not available, they go to the Micronesian Resource Center.

22. Detective Raval testified that they couldn't get ahold of one of the officers that spoke Pohnpeian or Chuukese. Detective Raval didn't have any more questions to ask Defendant, so she told Defendant "while we were in the car you understood exactly what I said in English" to which Defendant responded "yes, I just came back from Hawaii."

23. Sergeant Santos who was in the vehicle with Detective Raval and Defendant could not recall if Defendant ever asked for an interpreter, or whether Defendant ever told Officer Raval that he does not understand English. Sergeant Santos testified that Defendant did not appear to need help.

24. Defendant did not ask Officer Raval to repeat any questions, nor did he speak with an accent.

25. Defendant did not sign any written rights advisement form indicating he understood his *Miranda* rights.

26. Detective Raval was asked about an interview she had with the Office of the Attorney General ("OAG") on March 25, 2021, which was documented in a report prepared by the OAG Investigator. Detective Raval was asked about a statement she made during the interview whereby she stated Defendant did not speak English. Detective Raval testified that was incorrect: Defendant did not say he did not speak English, Defendant said he did not understand.

27. Detective Raval initially testified that the police report she prepared was true, complete, and accurate, but later acknowledged that portions of her testimony at the hearing were not included in the report. At one point, Detective Raval stated that the report given to her to review on the stand was not her "whole report."

## DISCUSSION

Defendant moves the Court to dismiss this matter with prejudice because he alleges his constitutional rights were violated by GPD's failure to provide him with an interpreter. *See generally*, Mot. Dismiss, Mar. 31, 2021. In the alternative, Defendant moves the Court to suppress any observations by GPD Officers after Defendant was stopped, questioned, and

detained; any and all written and oral statements made by Defendant; and any evidence seized belonging to Defendant. *Id.* The Government opposes, arguing that Defendant did not require an interpreter and that he was able to clearly understand all questions in English. *See generally,* Opp'n, Apr. 1, 2021.

### A. Defendant was in custody when he made statements to GPD

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, and is applicable to Guam through the Organic Act. *See* 48 U.S.C.A. § 1421b(d). "[S]uspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson v. Keohane,* 516 U.S. 99, 107 (1995) (citations omitted). "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.*

Here it is clear that Defendant was in custody prior to him being questioned in the vehicle by Detective Raval. Defendant was placed in handcuffs with his hands behind his back and was told that he was under arrest. Detective Raval further testified that she would have added the charge of resisting arrest had Defendant resisted coming with them to the precinct. *See Santos,* 2003 Guam 1 ¶ 51 (the ultimate inquiry is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."). Therefore, the issue before the Court is whether Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights. *See People v. Rasauo,* 2011 Guam 1 ¶ 16 ("A suspect informed of his Miranda rights may waive those rights, provided that the waiver is voluntary, knowing, and intelligent."). Defendant asserts that he did not knowingly and intelligently waive his rights as he was not provided with a Chuukese interpreter and therefore did not understand what was being asked of him. There is no dispute that no interpreter was provided to Defendant either during the car ride or upon Defendant's arrival at the Tiyan Precinct.

//

//

## B. Defendant did not knowingly and intelligently waive his *Miranda* rights

"For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (citation omitted). "*Miranda* warnings need not be a 'virtual incantation of the precise language contained in the Miranda opinion." *Rasauo*, 2011 Guam 1 ¶ 18. "*Miranda* is satisfied where, prior to the initiation of questioning, the police fully apprise the suspect of the State's intention to use his statements to secure a conviction." *Id.* at ¶ 19 (citing *Moran v. Burbine*, 475 U.S. 412, 420 (1986)). "[L]anguage difficulties may impair the ability of a person in custody to waive [his *Miranda*] rights in a free and aware manner." *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (citations omitted).

"There is a presumption against waiver" and the "prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights." *Garibay*, 143 F.3d at 536 (citations omitted). "To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 537 (quoting *Moran*, 475 U.S. at 421). "The government's burden to make such a showing 'is great,' and the court will 'indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* at 537 (quoting *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984)). In applying the "totality of the circumstances" test, the *Garibay* Court examined the following factors to determine whether the defendant's constitutional rights were knowingly and intelligently waived:

> (1) whether the defendant signed a waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system.

*Id.* at 538 (internal citations omitted).

In this case, Defendant sets forth that his native tongue is Chuukese. Defendant was advised of his rights orally in English. Defendant did not sign any written document in any language acknowledging that he understood his rights and that he waived or refused to waive those rights. Detective Raval testified that they were supposed to go over the written rights form, but they did not have a translator and she did not have any more questions for Defendant.

Defendant did not have the assistance of a Chuukese translator at any point during the interview with Detective Raval in the car. Detective Raval acknowledged that there was no emergency or urgency to conduct the interview in the car rather than at the police station. Detective Raval further acknowledged that she could have called a translator to assist with the questioning of Defendant in the car. Detective Raval testified that she offered Defendant an interpreter in the car and when they got to the station. Detective Raval testified that she offered Defendant an interpreter because he told her he didn't understand. Detective Raval testified that Defendant did not explicitly say he understood English or that he spoke perfect English.

It was not apparent from the testimony that Defendant's rights were "individually and repeatedly explained to him." Detective Raval testified that she read Defendant his rights from memory, not from a card, and only at his place of employment. Detective Raval further testified that when they got to the station, she tried to get an interpreter for Defendant. Detective Raval testified that she tried to get a hold of officers who were Micronesian and spoke the various languages but could not and because she did not have any additional questions for Defendant, did not search further for an interpreter. Detective Raval testified that she told Defendant "while we were in the car you understood exactly what I said in English" and he responded "yes, because I just came back from Hawaii." Although Defendant may have just come back to Guam from Hawaii, no further evidence was presented by the Government as to what Defendant was doing in Hawaii that would infer he was proficient in English.

No testimony was provided as to whether Defendant had any prior experience with the criminal justice system. The Government sets forth in its opposition that Defendant refused to acknowledge his Miranda rights in CM0125-08 and requests the Court take judicial notice of this fact. The Court declines to give any weight to such documents or events occurring in

CM0125-08 as related to Defendant's English proficiency without additional testimony as to the circumstances that led to Defendant refusing to acknowledge his *Miranda* rights in that matter.

Lastly, although a defendant may understand some English, that alone does not signify that he or she knowingly and intelligently waived his or her *Miranda* rights. Nor does the fact that Defendant recently came back from Hawaii, without more, signify that Defendant is proficient in English. *See, e.g., Cambridge Management, Inc. v. Jadan*, 481 P.3d 63 (Haw. 2021) ("A person who has lived in the United States their entire life may nonetheless have limited English proficiency such that they require an interpreter.").

Therefore, upon review of all the *Garibay* factors, the Court does not find that the Government has met its burden of proving that Defendant knowingly and intelligently waived his *Miranda* rights. "The right to remain silent and the right to have counsel present during questioning are indispensable to the protection of the Fifth Amendment privilege against self-incrimination." *Garibay*, 143 F.3d at 540. Accordingly, the Court suppresses any statements made by Defendant to GPD on March 4, 2021.

## C. GPD's actions require suppression of the evidence, not dismissal

Defendant also moves the Court to dismiss this matter based on violation of his due process rights. (Mot. Dismiss at 3-7). The Fourteenth Amendment of the United States Constitution guarantees to all citizens the right not to be deprived of life, liberty or property without due process of the law. U.S. Const. amend. XIV.

Although the Government did not meet its burden in proving that Defendant knowingly and intelligently waived his *Miranda* rights based on Defendant's limited English proficiency, the Court does not find that GPD's actions were inherently discriminatory against non-English speaking individuals. GPD did not question Defendant after he requested a second time for an interpreter. Since the filing of the criminal case, Defendant has been provided with a court interpreter. "Due process requires the exclusion of evidence obtained by the government in disregard of an individual's constitutional rights." *People v. Sangalang*, 2001 Guam 18 ¶ 17. Accordingly, the Court will not dismiss this matter, but will suppress any statements made by Defendant to GPD on March 4, 2021.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** Defendant's Motion to Dismiss for Violation of Defendant's Constitutional Rights or in the Alternative to Suppress Evidence. The Court will not dismiss this matter, but will suppress any statements made by Defendant to GPD on March 4, 2021.

Jury Selection and Trial remains set for May 5, 2021 at 9:30 a.m. as this matter is asserted. The parties shall return for a remote Pre-Trial Conference via Zoom on April 26, 2021 at 11:30 a.m. To appear for this remote hearing via Zoom, enter Meeting ID: **328-483-6667** and Passcode: **992379**. The Court will further address Defendant's Motions *in Limine*[1] and Motion to Dismiss and to Consolidate Multiplicitous Charges for Violation of Defendant's Right Not to be Placed in Double Jeopardy filed April 19, 2021 at the Pre-Trial Conference.

**IT IS SO ORDERED** this _23rd_ day of April, 2021.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

---

[1] On April 19, 2021, Defendant filed the following Motions *in Limine*: (1) Defendant's Motion *in Limine* to Exclude the Testimony of Putative Prosecution Expert Maria Teresa P. Aguon; (2) Defendant's Motion *in Limine* to Exclude All Out of Court Statements, Including Law Enforcement Records; (3) Defendant's Motion *in Limine* to Exclude Other Acts of Evidence; (4) Defendant's Motion *in Limine* to Have a Confidential Questionnaire Published to the Jury; and (5) Defendant's Motion *in Limine* to Exclude Defendant's Arrest Record and Rap Sheet.

*People v. Felix*
Case No. CF0125-21
Decision and Order